## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

DAVID JOWETT and BRITTNEY
JOWETT, individually and as parents and
natural guardians of S.J.,

        Plaintiffs,

    v.

MELISSA CHURCHILL, et al.,

        Defendants.

No. 20-13083 (RMB/SAK)

**OPINION**

**APPEARANCES:**
Jacqueline M. Vigilante
99 North Main Street
Mullica Hill, New Jersey 08062

    *On behalf of Plaintiffs*

Benjamin Henry Zieman
Anderson Shah LLC
457 Haddonfield Road, Suite 120
Cherry Hill, New Jersey 08002

    *On behalf of Defendants Steven Crispin, West Deptford Board of Education, Jill Scheetz, and*
    *West Deptford School District*

Erin Donegan
Anderson & Shah, LLC
1040 Broad Street, Suite 304
Shrewsbury, New Jersey 07702

    *On behalf of Defendants Steven Crispin, West Deptford Board of Education, Jill Scheetz, and*
    *West Deptford School District*

James R. Birchmeier
Birchmeier & Powell LLC
1891 State Highway 50
P.O. Box 582
Tuckahoe, New Jersey 08250

>   *On behalf of Defendant Melissa Churchill*

**RENÉE MARIE BUMB, United States District Judge**

This matter comes before the Court on the Motions to Dismiss brought by

Defendants Steven Crispin, Jill Scheetz, the West Deptford Board of Education (the

"Board"), and the West Deptford School District (the "District," and, collectively, the

"West Deptford Defendants"), [Docket No. 25]; and Defendant Melissa Churchill, [Docket

No. 26]. For the reasons expressed below, the Court will grant the West Deptford

Defendants' Motion and grant, in part, and deny, in part Churchill's Motion.

## I.    FACTUAL BACKGROUND[1]

Plaintiffs David Jowett and Brittney Jowett are the parents of S.J., who was eight

years old at the time of the incidents giving rise to this suit. [Docket No. 16, ¶¶ 1, 13.]

During the 2018–2019 school year, S.J. attended Red Bank Elementary School ("Red

Bank") in person. [See id., ¶¶ 14–15, 58.] Red Bank is a public school operated by

Defendant, the Board. [Id., ¶ 3.] The Board "is a public entity properly authorized to

operate public schools in West Deptford, New Jersey." [Id., ¶ 4.] At all relevant times to this

---

[1] This factual background is taken from the Amended Complaint, exhibits attached thereto, and matters of public record. See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (stating that a court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record") (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). For purposes of the pending Motions, the Court assumes the facts alleged in the Amended Complaint to be true. See Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).

lawsuit, Defendant Crispin was a Board employee and the Superintendent of the District, and Defendant Scheetz was a Board employee and the Principal of Red Bank. [Id., ¶¶ 5–6.] Defendant Churchill was a District employee and Lunch Playground Clerical Aide ("LPC") at Red Bank. [Id., ¶ 7.][2]

Plaintiffs' Amended Complaint alleges the following, which for the purposes of the pending Motions, the Court assumes to be true. See Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). Churchill's duties included being present in the lunchroom during lunch at Red Bank. [Docket No. 16, ¶ 18.] Students would regularly invite her—whom they referred to as "Apples"—to sit with them at their tables during lunch, which other Defendants knew about and tolerated. [Id., ¶¶ 20, 22.]

On May 30, 2019, S.J. was at school at Red Bank. [Id., ¶ 15.] During lunch that day, S.J. asked Churchill to sit at her table. [Id., ¶ 24.] Churchill, who had been sitting at a different table, responded that she "would only move to S.J.'s table if S.J. scratched her back first." [Id., ¶¶ 23–25.] S.J., not wanting to scratch Churchill's back, instead rubbed her knee against Churchill's back. [Id., ¶ 27.] Plaintiffs allege that Churchill immediately "rose to her feet in a fit of anger and grabbed S.J. by the arm" and proceeded to "violently drag[] S.J. through the cafeteria" by her forearm, "threatening her with detention and discipline." [Id. ¶¶ 28–29.] Despite being present for Churchill's actions, Jane Does 11–20—"who were

_____

[2] Plaintiffs also list Jane and John Does 1–20 as Defendants. [See Docket No. 16, ¶¶ 8–9.] Jane and John Does 1–10 "were at all times relevant Board members of West Deptford Schools." [Id., ¶ 8.] Jane Does 11–20 "were at all times relevant Board employees at Red Bank Elementary School." [Id., ¶ 9.]

other LPCs and certified teaching staff"—"did not intervene." [Id., ¶ 30.] Nor did Jane

Does 11–20 "report abusive conduct" to anybody. [Id., ¶ 31.]

Churchill removed S.J. from "the cafeteria and into the school foyer situated directly

in front of the main office and principal's office," where she "forced S.J. into a chair and

restrained her in the chair, by placing both of her hands on S.J.'s shoulder, standing over

her[,] and blocking [her] from leaving or standing up." [Id., ¶¶ 34–35.] She also continued to

threaten S.J. that she was going to report S.J. to the principal. [Id., ¶ 37.] However,

Churchill ultimately simply sent S.J. back to her classroom after approximately ten minutes.

[Id., ¶ 38.]

The Amended Complaint alleges that there is video evidence that supports Plaintiffs'

allegations regarding Churchill's conduct. [See, e.g., id., ¶ 45.] Defendants disagree and

have submitted as an exhibit a copy of said video evidence. [See Docket No. 25, Exhibit A

(recording of the incident submitted as a physical exhibit).] Defendants argue that the Court

may consider this evidence, despite it not being included in the Amended Complaint,

because it is "integral to" and "explicitly relied upon in the" Amended Complaint. See

Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014). Plaintiffs appear to concede that the

Court may rely on the video. [See Docket No. 35, at 13.] The Court has reviewed the video

evidence and, suffice it to say that, at this juncture, in this Court's view, the video does not

support Plaintiffs' allegations that S.J. was "violently dragged" by Churchill. The Court

leaves this for another day, as set forth below.

At some point after the incident, another Board employee, who apparently witnessed

Churchill's actions in the foyer, notified Principal Scheetz of her observations. [Id., ¶ 40.]

Later on the day of the incident, Scheetz "called S.J. into her office to discuss the incident,

ostensibly to find out what happened." [Id., ¶ 41.] However, her main intent was actually to "cover[] up the incident." [Id., ¶ 42.] Scheetz "attempted to manipulate S.J. by telling [her] that she wasn't in trouble and asking S.J. to 'keep what happened between us' or words to that effect." [Id., ¶ 43.] However, this had the effect of making S.J. think she had done something wrong. [Id., ¶ 44.] Later that day, Scheetz called S.J.'s parents—Plaintiffs—and told "them that S.J. had kicked a custodian but that [Scheetz] had spoken with both of them and the issue was resolved." [Id., ¶ 45.] "Scheetz did not disclose that Churchill had assaulted, or even touched S.J." because, Scheetz claimed, "S.J. begged her not to tell Plaintiffs what happened." [Id., ¶ 46.] "Everything Scheetz told the Plaintiffs was misleading and false." [Id., ¶ 47.]

Eventually, Plaintiffs learned from S.J. that Churchill had asked S.J. to touch her and scratch her back, which had made S.J. uncomfortable. [Id., ¶ 48.] Having learned what happened from S.J., Plaintiffs requested to meet with Scheetz and Superintendent Crispin. [Id., ¶ 50.] While Crispin did not respond to Plaintiffs' request, Plaintiffs and Scheetz had a meeting on May 31, 2019, at which Scheetz "gave further false information that S.J. and Churchill were sitting together 'scratching each other's backs' and that S.J. kicked Churchill." [Id., ¶¶ 50–51.] After the meeting, Scheetz notified Plaintiffs that "the conduct of Churchill was so disturbing and upsetting that Churchill was terminated." [Id., ¶ 52.] This only occurred, however, "after Plaintiffs discovered that Scheetz was attempting to cover up the incident." [Id., ¶ 54.]

S.J. attended two more days of school at Red Bank—on May 30 and June 3, 2019— before, "due to the emotional distress, fear and anxiety," she "remained out of school for homebound instruction . . . through the end of the school year." [Id., ¶ 58.]

Prior to the date of this incident, the Board had employed Churchill as a caregiver at its Young Eagles after-school care program, "during which time Churchill behaved inappropriately and aggressively toward children." [Id., ¶ 55.] Rather than terminating her then, the Board transferred Churchill to Red Bank as an LPC. [Id., ¶ 56.] At no point did any Defendant notify the Division of Child Protective Services of what happened to S.J. [See id., ¶ 54.]

## II.   PROCEDURAL HISTORY

Plaintiffs initially filed this suit on September 23, 2020. [Docket No. 1.] Pursuant to this Court's Individual Rules and Procedures, the parties exchanged pre-motion letters in November 2020. [Docket Nos. 11–12.] The Court did not hold a pre-motion conference, but encouraged Plaintiffs to amend their Complaint. [Docket No. 13.] Plaintiffs filed their Amended Complaint on December 21, 2020. [Docket No. 16.]

The Amended Complaint alleges seven Counts. Count I alleges a state-created danger under 42 U.S.C. § 1983. [Docket No. 16, ¶¶ 76–93.] Count II alleges a Monell claim, also pursuant to § 1983. [Id., ¶¶ 94–104.] Count III alleges another § 1983 violation, apparently pursuant to the New Jersey Anti-Bullying Bill of Rights Act, N.J. STAT. ANN. § 18A:37-15(b)(6). [See id., ¶¶ 105–119.] Count IV alleges a Fourth Amendment violation, via § 1983. [Id., ¶¶ 120–38.] Count V alleges a violation of Fourteenth Amendment Due Process. [Id., ¶¶ 139–50.] Count VI alleges a common law assault and battery claim as

against Churchill only. [Id., ¶¶ 151–56.] Finally, Count VII alleges a common law negligent hiring and retention claim as against the Board only.[3] [Id., ¶¶ 157–61; Docket No. 34, at 30.]

The West Deptford Defendants filed their collective Motion to Dismiss on January 19, 2021. [Docket No. 25.] Defendant Churchill filed her Motion to Dismiss on January 21, 2021. [Docket No. 26.] Plaintiff responded in opposition to those Motions on March 1, 2021. [Docket Nos. 34–35.] The West Deptford Defendants timely filed their reply on March 8, 2021. [Docket No. 37.]

III.    **JURISDICTION**

The Court exercises subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367. Section 1331 grants the Court federal question jurisdiction over Counts I–V, as they allege claims that arise under the Constitution or laws of the United States. The Court has supplemental jurisdiction over Counts VI and VII, as those claims and Counts I–V "derive from a common nucleus of operative fact," rendering them "part of the same case or controversy" pursuant to § 1367(a). See United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).

---

[3] The West Deptford Defendants argue in their Motion that Count VII should be against the Board only. [Docket No. 25-1, at 48–49.] Plaintiffs agree. [See Docket No. 34, at 30 ("Plaintiffs' claim of negligent hiring and retention are against the Board of Education.").] Therefore, the Court need not address that argument.

Additionally, Plaintiffs' brief appears to allude to a "negligent supervision" claim against Scheetz, Crispin, and the Board in Count VII. [See id. ("Plaintiffs' . . . claim of negligent supervision is against the Board, Crispin, and Scheetz.").] However, it does not appear to this Court that Plaintiffs pled this claim in the Amended Complaint. [See Docket No. 16, ¶¶ 76–161.] Therefore, the Court will not address such a claim here.

## IV.    STANDARD

When considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho, 423 F.3d at 351. It is well-settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing Conley v. Gibson, 355 U.S. 41, 47 (1957); then citing Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (alterations in original) (citations omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009)). A court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir.

2014) (citing <u>Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192,

1196 (3d Cir. 1993)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will

ultimately prevail but whether the claimant is entitled to offer evidence to support the

claim." <u>Twombly</u>, 550 U.S. at 563 n.8 (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236

(1974)); <u>see</u> <u>also</u> <u>Iqbal</u>, 556 U.S. at 684 ("Our decision in <u>Twombly</u> expounded the pleading

standard for 'all civil actions' . . . ."); <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d

Cir. 2009) ("<u>Iqbal</u> . . . provides the final nail in the coffin for the 'no set of facts' standard

that applied to federal complaints before <u>Twombly</u>."). "A motion to dismiss should be

granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is

plausible on its face.'" <u>Malleus</u>, 641 F.3d at 563 (quoting <u>Twombly</u>, 550 U.S. at 570).

## V.   ANALYSIS

The West Deptford Defendants' Motion seeks the dismissal of "all claims in the

Amended Complaint against the Board, Crispin, and Scheetz except for the negligent hiring

and retention claim for compensatory damages against the Board in Count [VII]." [Docket

No. 25-1, at 49.] Churchill's Motion seeks the dismissal of the Amended Complaint in its

entirety. [Docket No. 26-1, at 1.] The Court will address the parties' arguments in turn.

### A.   Plaintiffs' Standing To Bring Individual Claims

Both Churchill and the West Deptford Defendants first argue that S.J.'s parents lack

standing to assert any individual claims. [<u>See</u> Docket No. 25-2, at 10–12 (West Deptford

Defendants); Docket No. 26-1, at 5 (Churchill).] Plaintiffs seem to concede this argument,

as they write in their Response that they "assert the claims of this lawsuit on behalf of their

minor daughter only, and not individually on their own behalf." [Docket No. 34, at 7;

Docket No. 35, at 7.] Therefore, the Court will hold that Plaintiffs do not raise any claims on their own behalf, but rather only on S.J.'s behalf.

**B.    Section 1983 Claims in Count III[4]**

In Count III, Plaintiffs allege a § 1983 claim on the theory that Defendants violated S.J.'s Fourteenth Amendment Due Process rights by not providing her "a full and fair investigation of bullying, intimidation and harassment" as required by the New Jersey Anti-Bullying Bill of Rights Act, N.J. STAT. ANN. § 18A:37-15, et seq. (the "Anti-Bullying Act"). [See Docket No. 16, ¶¶ 105–19.] Section 1983 states, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. The Third Circuit has held that, "[i]n order to establish a section 1983 claim, a plaintiff 'must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law.'" Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996) (citation omitted).

"The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has

---

[4] Defendants also specifically argue that Plaintiffs' § 1983 claims against Defendant Crispin—the District's Superintendent—should be dismissed. [See Docket No. 25-1, at 13–17.] However, because the Court will dismiss all § 1983 claims in the Amended Complaint against Crispin for other reasons, it need not address Defendants' Crispin-specific arguments.

alleged a deprivation of a constitutional right at all.'" Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998)). This requires that the plaintiff "narrow the field and assert a specific constitutional right." See Shabazz v. New Brunswick Police Dep't, No. 13-1975 (FSH), 2014 U.S. Dist. LEXIS 88157, at *24 (D.N.J. June 27, 2014). Here, Count III repeatedly alleges that Defendants' actions were "in direct violation of NJ's Anti-Bullying Bill of Rights Act." [Docket No. 16, ¶¶ 9–11.]

Plaintiffs' argument implicitly contends that the Anti-Bullying Act created a federal right upon which S.J. can state a § 1983 claim. This argument fails because § 1983 "does not provide a cause of action for violations of state statutes," such as the Anti-Bullying Act, given that "a state statute cannot, in and of itself, create a constitutional right." Brown v. Grabowski, 922 F.2d 1097, 1113 (3d Cir. 1990); see also Shuman v. Penn Manor Sch. Dist., 422 F.3d 141, 150 n.4 (3d Cir. 2005) ("It is well-accepted that 'state law does not ordinarily define the parameters of due process for Fourteenth Amendment purposes; rather, the minimum, constitutionally mandated requirements of due process in a given context and case are supplied and defined by federal law, not by state law or regulations.'" (quoting Patterson v. Armstrong Cnty. Children & Youth Servs., 141 F. Supp. 2d 512, 537 (W.D. Pa. 2001)). Therefore, Plaintiffs' reliance on the Anti-Bullying Act to establish a right that is subject to § 1983 protection is misguided.[5]

---

[5] In fact, the Anti-Bullying Act itself "does not create or alter any tort liability." N.J. STAT. ANN. § 18A:37-18.

Nor can Plaintiffs successfully argue that Defendants' actions otherwise violated S.J.'s substantive due process rights. First of all, "there is no constitutional right to the investigation of another," so Plaintiffs' dissatisfaction with Defendants' investigation into the incident does not give rise to a § 1983 claim. See Lee v. City of Philadelphia, 627 F. App'x 175, 177 (3d Cir. 2015). Moreover, Plaintiffs' remaining theories for Count III require that Scheetz's behavior was "so egregious, so outrageous, that it may fairly be said to shock the conscience." Miller v. Fenton, 474 U.S. 104, 109 (1985); see also Miller v. City of Philadelphia, 174 F.3d 368, 375 (3d Cir. 1999) (requiring the action to be "so ill-conceived or malicious that it shocks the conscience"). Whether an action shocks the conscience is a factually contextualized question. See Miller, 174 F.3d at 375.

Here, Plaintiffs argue that, "after learning of the assault on S.J., instead of an investigation, Scheetz brought S.J.[ ]to her office, and while alone with S.J."—an eight-year-old who "was physically assaulted and traumatized [by] an adult school employee just hours earlier"—"attempted to intimidate and coerce her to remain silent about what happened." [Docket No. 34, at 9–10.] This, Plaintiffs continue, constituted "a coercive interrogation" that "shocks the conscience and is clearly an abuse of her power unjustified by any legitimate objective." [Id. (quoting Lewis, 523 U.S. at 841).]

Even accepting Plaintiffs' allegations as true, Count III fails to state a claim because the complained of behavior does not "shock the conscience" as a matter of law. As an example, in Callaway v. N.J. State Police Troop A, this Court dismissed a coercive interrogation claim where, among other things, the plaintiff's "arms were lifted above his head causing pain" and where the defendants did not provide him "food, water[, or] medical care for fourteen hours." No. 12-5477 (RBK), 2013 U.S. Dist. LEXIS 50638, at

*17–18 (D.N.J. Apr. 9, 2013). This behavior, the Court held, did not "shock the contemporary conscience." Id. at *17. In another case in this District, the Court dismissed a coercive interrogation claim where the plaintiff alleged "that the interrogation was conducted in contravention of his request for counsel, that he was limited to three outgoing telephone calls, and that he was not given any food or drink during the interrogation, which lasted for approximately three-and-a-half hours." Peppers v. Rectenwald, at *19. The Court held that "[n]othing about these circumstances rises to the level of conscience-shocking behavior." Id.

The only allegation that lends any support to Plaintiffs' coercive interrogation argument is that Scheetz allegedly told S.J. not to tell anybody about their conversation. Plaintiffs allege that this reflects an effort by Defendants to cover up the incident. Even if that is true, it plainly does not "shock the conscience" for a school principal to tell a young student "that she wasn't in trouble and ask[ her] to 'keep what happened between us' or words to that effect." [Docket No. 16, ¶ 43.] Nor is there any allegation of physical harm or even contact during the conversation between S.J. and Scheetz. Plainly, Plaintiffs' argument does not have a basis in the law. Therefore, Plaintiffs fail to state a claim with respect to Count III, which this Court will dismiss.[6]

---

[6] Defendants raise other arguments in favor of dismissing Count III, namely (1) that the alleged cover-up did not deprive S.J. of any right, since she is not entitled to an investigation; (2) there is no evidence to support a claim of conspiracy; and (3) Scheetz is entitled to qualified immunity. [Docket No. 25-1, at 17–22; Docket No. 37, at 5.] However, the Court need not address those issues here, given the above analysis.

### C.    Procedural Due Process Claims in Count V

Count V alleges, in part, that Defendants' actions deprived S.J. of her Fourteenth Amendment procedural due process right "to not be expelled from the education process without due process of law." [Docket No. 16, ¶¶ 139–50.] Defendants argue that this claim should be dismissed for two reasons. "First, to the extent S.J. is complaining about her placement on 'homebound instruction' for the rest of the year, that claim fails because the Amended Complaint does not charge anyone (let alone Crispin or Scheetz) with placing S.J. on homebound instruction and thus 'depriving' her of a property interest." [Docket No. 25-1, at 22.] Rather, according to the Amended Complaint, it was "due to the emotional distress, fear and anxiety" that S.J. "remained out of school for homebound instruction . . . through the end of the school year." [Docket No. 16, ¶ 58.] "Second, to the extent S.J. is complaining about Churchill removing her from the cafeteria, this removal was de minimis and thus did not implicate procedural due process." [Docket No. 25-1, at 22.]

Plaintiffs did not respond to these arguments in their brief in opposition. [See Docket No. 34.] Moreover, the Court agrees with both of Defendants' arguments. Therefore, to the extent that Plaintiffs allege procedural due process claims in Count V, those claims will be dismissed.

### D.    Substantive Due Process Claims in Counts I and V

Counts I and V both allege state-created danger substantive due process claims. [See Docket No. 16, ¶¶ 76–93, 139–50.] As a general matter, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 197 (1989). However, when the State itself "assume[s] responsibility for the safety of an individual for

whom it affirmatively creates or enhances a risk of danger," the state-created danger theory applies, and the affected individual may allege a constitutional claim under § 1983.[7] <u>See Kaucher v. Cty. of Bucks</u>, 455 F.3d 418, 431 (3d Cir. 2006).

As an initial matter, Defendants argue that Plaintiffs cannot establish a state-created danger claim because the harms to S.J. were inflicted by a state actor—Churchill—and not a private citizen. [<u>See id.</u> at 27–28.] Defendants rely on a case in which the Third Circuit held that the state-created danger theory is "a narrow exception to the general rule that the state has no duty to protect its citizens from <u>private harms</u>." <u>Henry v. City of Erie</u>, 728 F.3d 275, 286 (3d Cir. 2013) (emphasis added); <u>see also</u> <u>DeShaney</u>, 489 U.S. at 195 (calling the state-created danger theory one of "two exceptions to [the] rule" that "[n]othing in the language of the Due Process Clause itself requires the State to protect its citizens' life,

---

[7] Under Third Circuit precedent, the four elements of a meritorious state-created danger claim are:

    (1) "the harm ultimately caused was foreseeable and fairly direct;"
    (2) a state actor acted with a degree of culpability that shocks the conscience;
    (3) a relationship between the state and the plaintiff existed such that "the plaintiff was a foreseeable victim of the defendant's acts," or a "member of a discrete class of persons subjected to the potential harm brought about by the state's actions," as opposed to a member of the public in general; and
    (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

<u>Bright v. Westmoreland Cnty.</u>, 443 F.3d 276, 281 (3d Cir. 2006) (citations omitted) (first quoting <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1208, 1209 n.22 (3d Cir. 1996); and then quoting <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906, 913 (3d Cir. 1997)). Defendants concede that Plaintiffs have satisfied the second and third elements here. [<u>See</u> Docket No. 25-1, at 27.] Because the Court will rest its decision on Defendants' other argument, as discussed below, it need not address whether Plaintiffs have satisfied the first and fourth elements listed above.

liberty, or property from <u>private harms</u>") (emphasis added). "Based on this distinction,"
Defendants contend, "several courts in this Circuit have dismissed state-created danger
claims premised on harms directly inflicted by state actors." [Docket No. 37, at 7.]
Defendants' assertion is correct. <u>See</u> <u>A.B. v. Vineland Bd. of Educ.</u>, No. 17-11509
(RBK/KMW), 2019 U.S. Dist. LEXIS 93126, at *16–18 (D.N.J. June 4, 2019) (accepting
the defendants' argument that the state-created danger theory was "not applicable because
[the harm-doer was] a <u>state actor</u>, and the state-created danger doctrine simply operates as
an exception to the rule that the state need not protect citizens from <u>private</u> harms)
(emphases in original); <u>Green v. Mount Carmel Area Sch. Dist.</u>, No. 18-2218 (MWB), 2019
U.S. Dist. LEXIS 69021, at *16 n.63 (M.D. Pa. Apr. 24, 2019) (rejecting the plaintiff's
unsupported argument that the state-created danger theory "is not . . . specifically
confined" to cases in which "non-state actors cause the ultimate harm"); <u>McGhee v. City of
Philadelphia</u>, No. 02-8992 (JTG), 2003 U.S Dist. LEXIS 19513, at *6 (E.D. Pa. Oct. 23,
2003) (rejecting a state-created danger claim "because the act of violence was committed by
. . . a public actor, and not by a private citizen").

     Plaintiffs respond by citing two cases. The first is <u>Rivas v. City of Passaic</u>, 365 F.3d
181, 194 (3d Cir. 2004). In that case, the plaintiff alleged a state-created danger claim where
two state-actor EMTs were aware that the decedent had suffered one or more seizures and,
therefore, that it would be medically inadvisable to restrain him or to obstruct his airways.
<u>Id.</u> at 194. The EMTs called police for assistance and, upon their arrival, told the police that
the decedent had assaulted one of them. <u>Id.</u> at 194–95. They did not tell the police,
however, that the decedent had just suffered one or more seizures. <u>Id.</u> at 195. The police
restrained the decedent and blocked his airways in various manners, various times. <u>See</u> <u>id.</u>

at 186–89. Within about an hour of the police's arrival, the decedent was pronounced dead. See id. at 188. The Court ultimately held that summary judgment was not appropriate in that case because a reasonable factfinder could find that the plaintiff had proven all four of the elements for a state-created danger claim, outlined above. See id. at 193–97.

The second case Plaintiffs cite is Does v. Se. Delco Sch. Dist., 272 F. Supp. 3d 656 (E.D. Pa. 2017). In that case, a teacher who had previously been accused of inappropriately touching children, was reassigned to teach different grade, where he eventually inappropriately touched multiple students. Id. at 662. The plaintiffs alleged that school administrators were subject to a state-created danger claim, and the Court agreed with them as to certain defendants. Id. at 686.

Crucially, however, neither of the cases Plaintiffs cite actually addressed the issue of whether a state-created danger claim is possible in a case where the ultimate harm was inflicted by a state actor rather than a private actor. See generally Rivas, 365 F.3d at 194–97; Does, 272 F. Supp. 3d at 681–86. That the parties in those cases failed to raise this issue, and the courts failed to raise it sua sponte, does little to support Plaintiffs' argument here. See Texas v. Cobb, 532 U.S. 162, 169 (2001) ("Constitutional rights are not defined by inference from opinions which did not address the question at issue."); United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392, 400 (3d Cir. 2003) (applying Cobb to reject an argument that the Third Circuit could not address an issue because it had failed to address the issue in a previous decision). This Court agrees with the logic of the several cases that have squarely address this issue in this Circuit: the state-created danger theory is "a narrow exception to the general rule that the state has no duty to protect its citizens from private harms." Henry, 728 F.3d at 286 (emphasis added). A public employee,

acting as a state actor, cannot cause a "private harm" as <u>Henry</u> requires. Therefore, Plaintiffs' state-created danger claims in Counts I and V fail, and the Court will dismiss them.[8]

    **E.**    **Fourth Amendment Claims in Count IV**

    In Count IV, Plaintiffs allege that both Churchill and Scheetz unlawfully seized S.J. in violation of the Fourth Amendment. [Docket No. 16, ¶¶ 120–38.] The Fourth Amendment protects against unreasonable searches and seizures. <u>See</u> U.S. CONST. amend. IV. "A seizure occurs for Fourth Amendment purposes when 'a reasonable person would have believed that he was not free to leave.'" <u>Shuman</u>, 422 F.3d at 147 (quoting <u>Michigan v. Chesternut</u>, 486 U.S. 567, 573 (1988)). In determining that a reasonableness standard applies in cases applying the Fourth Amendment to the public school setting, the Supreme Court of the United States noted "the role public schools play in furthering 'publicly mandated educational and disciplinary policies.'" <u>Wallace by Wallace v. Batavia Sch. Dist. 101</u>, 68 F.3d 1010, 1012 (7th Cir. 1995) (quoting <u>New Jersey v. T.L.O.</u>, 469 U.S. 325, 336 (1985)). It also recognized that "the preservation of order and a proper educational

---

[8] The Amended Complaint also alleges that "[t]here existed a special relationship between Crispin, [Scheetz], the District and S.J. such that the defendants had a duty to protect S.J.'s [sic] from the assault, bullying, and intimidation by its employee Churchill." [Docket No. 16, ¶ 141.] Plaintiffs appear to abandon this claim in their brief in opposition. [<u>See generally</u> Docket No. 34.] Regardless, the Court will note that, to the extent such a claim is in fact asserted, it will be dismissed. A special relationship only exists between a public school and a student "under certain narrow circumstances." <u>See</u> <u>Morrow v. Balaski</u>, 719 F.3d 160, 171 (3d Cir. 2013) (citing <u>D.R. v. Middle Bucks Area Vocational Tech. Sch.</u>, 972 F.2d 1364, 1371–72 (3d Cir. 1992)). Plaintiffs have not shown that such "narrow circumstances" exist here, but rather seem to rely on the general existence of a duty. Therefore, Plaintiffs do not adequately allege that a special relationship existed between S.J. and Defendants. Any claim relying on such a relationship will be dismissed.

environment requires close supervision of schoolchildren, as well as the enforcement of rules against conduct that would be perfectly permissible if undertaken by an adult." T.L.O., 469 U.S. at 339. "Events calling for discipline are frequent occurrences and sometimes require immediate, effective action." Id. (quoting Goss v. Lopez, 419 U.S. 565, 580 (1975)).

As such, "seizures in the public school context [are] governed by the reasonableness standard, giving special consideration to the goals and responsibilities of our public schools." Shuman, 422 F.3d at 148. "Fourth Amendment reasonableness 'is predominantly an objective inquiry.'" Ashcroft v. al-Kidd, 563 U.S. 731, 736 (2011) (quoting City of Indianapolis v. Edmond, 531 U.S. 32, 47 (2000)). Courts "ask whether 'the circumstances, viewed objectively, justify [the challenged] action.'" Id. (quoting Scott v. United States, 436 U.S. 128, 138 (1978)). "If so, that action was reasonable 'whatever the subjective intent' motivating the relevant officials." Id. (emphasis in original) (quoting Whren v. United States, 517 U.S. 806, 814 (1996)).

Here, a seizure occurred for Fourth Amendment purposes when Scheetz brought S.J. into her office, given that S.J. did not believe that she was free to leave. [See Docket No. 16, ¶ 128.] The question becomes, then, whether the seizure was reasonable. The only aspect of this seizure that Plaintiffs allege was unreasonable was that Scheetz's alleged "purpose in bringing S.J. to her office was to coerce S.J. into keeping the incident a secret," which, Plaintiffs argue, is "not reasonable nor . . . legitimate." [See Docket No. 34, at 22 (citing Docket No. 16, ¶ 128–30).] Beyond her alleged subjective intent, Plaintiffs only allege that Scheetz told S.J. that she was not in trouble and asked her to keep the incident between them.

This Court finds, as a matter of law, that the seizure in this instance was reasonable. It is plainly, objectively justified for a principal of a school to call a student to her office to discuss a physical incident in which the student was involved. There are no allegations that the seizure was excessive in duration, that Scheetz inappropriately touched or physically restrained S.J., or that Scheetz's questioning was aggressive. Despite Plaintiffs' allegations that Scheetz's basis for seizing S.J. was not legitimate, they do not adequately allege that "the manner in which [S.J.] was allegedly seized and questioned" was unreasonable given the circumstances. See Jain v. Butler Sch. Dist. 53, 303 F. Supp. 672, 682 (N.D. Ill. 2018) (denying a motion to dismiss a Fourth Amendment claim where three administrators interrogated a nine-year-old student about cheating; insisted that he only answer with "yes" or "no," "'as if in a "court of law"'"; used "mean" and "raised" voices; accused him that he had done things he insisted he had not done; "repeatedly humiliated and belittled him"; refused to let him contact his parents; and elicited a false confession over the course of approximately 90 minutes). The facts in Jain are completely distinct from the case at hand, especially insofar as they paint a picture of the manner in which the interrogation occurred, and not simply in the subjective reasoning behind the seizure. See id. It is unreasonable for administrators to act as they did in Jain. However, the way Scheetz behaved in this case was reasonable. Any other finding would render the day-to-day work of public school administrators nearly impossible. Therefore, the Fourth Amendment claims as against Scheetz will be dismissed.[9]

---

[9] In the alternative, the Court finds that Scheetz is entitled to qualified immunity with respect to this claim. [See Docket No. 25-1, at 37–44.] Briefly, it was not "'clearly established' at the time of the challenged conduct" that a principal would violate a statutory

Conversely, given the video evidence, the Court intends to convert Churchill's Motion to Dismiss to a Motion to Summary Judgment, with respect to the Fourth Amendment claim only.[10] While the Amended Complaint's allegations—particularly with respect to Churchill "violently drag[ging]" S.J.—arguably adequately state a Fourth Amendment claim against Churchill, the disparity, mentioned above, between the allegations and the video evidence gives this Court great pause. Therefore, the Court intends to convert Churchill's Motion after permitting the parties to file "all material relevant to a summary judgment motion." See In re Rockefeller Ctr. Props. Sec. Litig., 184 F.3d 280, 287–88 (3d Cir. 1999). The Court takes this opportunity, however, to reiterate the Supreme Court precedent recognizing the need for "close supervision of schoolchildren" in public schools and the relatively broad umbrella of "[e]vents calling for discipline [that] sometimes require immediate, effective action." T.L.O., 469 U.S. at 339 (quoting Goss v. Lopez, 419 U.S. 565, 580 (1975)).[11] It is with these considerations in mind that the Court will determine

_____

[10] or constitutional right of a child by, after a physical incident at school, bringing the child to her office and telling her to "'keep what happened between us' or words to that effect." See Plumhoff v. Rickard, 572 U.S. 765, 778 (2014). [See Docket No. 16, ¶ 43.] Therefore, even if the facts of this case amounted to an unreasonable seizure in violation of the Fourth Amendment, Scheetz would be entitled to qualified immunity and the Court would dismiss the claim.

[10] The Court may convert a motion to dismiss to a motion for summary judgment if it "provide[s] the parties 'reasonable opportunity' to present all material relevant to a summary judgment motion." In re Rockefeller Ctr. Props. Sec. Litig., 184 F.3d 280, 287–88 (3d Cir. 1999). The Court must provide the parties "notice of the conversion" that "must be 'unambiguous' and must 'fairly apprise[]' the parties that the court intends to convert the motion." Id. (quoting Rose v. Bartle, 871 F.2d 331, 340–42 (3d Cir. 1989)).

[11] Churchill does not appear to raise qualified immunity as a defense. [See generally Docket No. 26-1.] Therefore, it is waived, and the Court need not address Plaintiffs' arguments. See Sharp v. Johnson, 669 F.3d 144, 158 (3d Cir. 2012) ("Qualified immunity is an affirmative

whether Plaintiffs' Fourth Amendment claim against Churchill should survive summary judgment. The Court also notes that, if Plaintiffs' Fourth Amendment claim against Churchill does not survive summary judgment, the Court intends to decline to exercise supplemental jurisdiction over the remaining state claims, pursuant 28 U.S.C. § 1367(c)(3).

### F.   Monell Claims in Count II

Under the Monell theory of liability, on which Plaintiffs' Count II relies, "a municipality may be held liable [under § 1983] for the conduct of an individual employee or officer only when that conduct implements an official policy or practice." Hill v. Borough of Kutztown, 455 F.3d 225, 245 (3d Cir. 2006) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978)). One way in which this standard can be met—the only way relevant to this case—is when "a final policy-maker renders the individuals conduct official for liability purposes by . . . ratifying the conduct or speech after it has occurred." Id.

Here, Plaintiffs allege that the District transferred Churchill to Red Bank after she "behaved inappropriately and aggressively toward children" in another role. [Docket No. 16, ¶ 55.] This decision, Plaintiffs argue, "ratified, approved and condoned Churchill's abusive behavior." [See id., ¶ 95.] However, the actions that Churchill took before being transferred to Red Bank are not the subject of this lawsuit. Plaintiffs would have to allege that the West Deptford Defendants somehow ratified Churchill's actions after the incident at issue here. See Hill, 455 F.3d at 245. Plaintiffs do not allege this—they only allege that the Board ratified Churchill's earlier inappropriate actions. [See Docket No. 16, ¶ 95;

---

defense and generally must be included in a responsive pleading or may be considered waived.").

Docket No. 34, at 28.] That may be true, but it is not relevant to a <u>Monell</u> claim about an incident that occurred <u>after</u> the allegedly ratified behavior. Moreover, the record reflects that the District in fact fired Churchill after this incident, making a ratification theory particularly confounding. [<u>See</u> Docket No. 16, ¶ 52.] Therefore, Count II will be dismissed with respect to Churchill's actions.

Plaintiffs next attempt to state a <u>Monell</u> claim on the basis that the Board "ratified [Scheetz's] unlawful conduct" of "actively attempt[ing] to cover up the assault and to manipulate and intimidate S.J. to prevent her from disclosing the incident to her parents." [<u>See</u> Docket No. 16, ¶¶ 96, 100.] Specifically, Plaintiffs allege that the Board was made aware of Scheetz's conduct and ratified it by acquiescing to it and/or by granting her tenure the following year. [<u>See</u> Docket No. 34, at 29.] However, "[i]t is well-settled that, if there is no [constitutional] violation in the first place, there can be no derivative municipal claim" under <u>Monell</u>. <u>Mulholland v. Gov't Cnty. of Berks</u>, 706 F.3d 227, 238 n.15 (3d Cir. ); <u>see also Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986) (if a municipal employee "inflicted no constitutional injury . . . , it is inconceivable that [the municipality] could be liable"); <u>Estate of Smith v. Morasco</u>, 318 F.3d 497, 505 (3d Cir. 2003) ("[T]he initial question in a section 1983 action is whether the plaintiff has alleged a deprivation of a constitutional right at all.").

Here, the Court has already held that Scheetz's conduct was not unlawful. As a result, it is impossible for <u>Monell</u> liability to extend to the Board since there was no relevant conduct for the Board to have "ratified" when it granted Scheetz tenure. Therefore, the Court will dismiss Plaintiffs' <u>Monell</u> claim with respect to Scheetz's actions, as well. This means that Count II will be dismissed in its entirety.

### G.      Assault and Battery Claim in Count VI

Plaintiffs alleges claims of assault and battery as against Churchill in Count VI.[12] In

New Jersey,

> A person is subject to liability for the common law tort of assault if: "(a) he
> acts intending to cause a harmful or offensive contact with the person of the
> other or a third person, or an imminent apprehension of such a contact, and
> (b) the other is thereby put in such imminent apprehension."

Leang v. Jersey City. Bd. of Educ., 198 N.J. 557, 591 (2009) (quoting Wigginton v.

Servidio, 324 N.J. Super. 114, 129 (App. Div. 1999)). Meanwhile, "[t]he tort of battery rests

upon a nonconsensual touching." Id. (citing Perna v. Pirozzi, 92 N.J. 446, 461 (1983). The

New Jersey Supreme Court "has said that '[a]ny non-consensual touching is a battery,' and

that such a cause of action is established by 'proof of an unauthorized invasion of the

plaintiff's person, even if harmless.'" Kelly v. Cnty. of Monmouth, 380 N.J. Super. 552, 559

(App. Div. 2005) (quoting Perna, 92 N.J. at 460–61).

Here, Churchill attempts to argue that her actions "do not rise to the level of assault

and battery" because she "was removing S.J. out of the school cafeteria after the minor

displayed inappropriate behavior by rubbing her knee against . . . Churchill's back." [Docket

No. 26-1, at 8.] However, the Amended Complaint clearly alleges that Churchill touched

S.J. in a "non-consensual" manner. [See Docket No. 16, ¶¶ 28–29, 34–38.] Moreover, a

reasonable jury could easily find, given the allegations in the Amended Complaint, that

Churchill "intended to cause a harmful or offensive contact with" S.J., and that S.J. was put

─────────────────────

[12] This claim is alleged only against Churchill. [See Docket No. 16, ¶¶ 151–56; Docket No.
34, at 30.] Therefore, the Court will not address the West Deptford Defendants' argument
as to why it should be dismissed as against the Board. [See Docket No. 25-1, at 48.]

in apprehension of such contact. [Id.] See Leang, 198 N.J. at 591. Therefore, Plaintiffs have adequately alleged claims of assault and battery as against Churchill, and the Court will deny Churchill's Motion in that respect.

###### H.    Punitive Damages

Plaintiffs seek punitive damages on all Counts. As a matter of law, they cannot seek punitive damages from the Board. See Newport v. Fact Concerts, 453 U.S. 247, 271 (1981) ("[W]e hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983."). Therefore, the Court will not permit Plaintiffs to seek punitive damages as against the Board.

## VI.    CONCLUSION

For the reasons expressed above, the Court will grant the West Deptford Defendants' Motion and grant, in part, and deny, in part Churchill's Motion, as follows: Counts I, II, III, and V will be dismissed in their entirety; Count IV will be dismissed as to the Waterford Township Defendants only, but will be converted to a Motion for Summary Judgment as to Churchill; Count VI, alleged only against Churchill, will not be dismissed; and Plaintiffs are precluded from seeking punitive damages from the Board. Count VII is not affected by this Opinion, other than to clarify that it is alleged solely against the Board and does not include a claim for negligent supervision. The Court further clarifies that Plaintiffs do not bring any claims individually, but rather only on S.J.'s behalf. Therefore, the only remaining claims will be: Count VI as against Churchill only and Count VII as against the Board only.

Resultingly, Defendants Crispin and Scheetz will be dismissed from the suit. An

accompanying Order shall issue.


August 31, 2021                                    s/Renée Marie Bumb
Date                                               RENÉE MARIE BUMB
                                                   United States District Judge